SAMUEL, Judge.
This is a suit seeking damages for the defendant’s alleged wrongful disconnection of plaintiff’s telephone service from her residence. After a trial on the merits, the lower court rendered judgment in favor of the defendant, dismissing the suit. Plaintiff has appealed.
On May 24, 1971 defendant received a letter from the vice squad of the New Orleans Police Department stating that as the result of an investigation at 2524 Cleveland Street, New Orleans, it had determined an illegal wagering operation was being conducted in which defendant’s telephone service was being used. The letter further stated three numbers, 821-2617, 821-4010 and 822-9303, were being used in the operation and requested that defendant discontinue service to those telephones. One of the numbers mentioned was plaintiff’s, a telephone located at her residence, 2522 Orleans Avenue, New Orleans. On the same day, May 24, defendant mailed a letter to the plaintiff notifying her that, because of the request received from the New Orleans Police Department, all telephone service to her residence would be removed after 4 p. m. on May 26, 1971. The letter was received by the plaintiff on May 26, 1971, approximately five hours before the scheduled shutoff time. Plaintiff thereupon obtained the services of a New Orleans attorney who contacted the telephone company to protest the disconnection.
There is conflicting evidence as to whether telephone service to the plaintiff’s residence was terminated on May 26 or May 28, 1971. Plaintiff and her niece testified the telephone was disconnected on May 26, while the only evidence supporting the May 28 date of disconnection was an entry in the defendant’s records made by an unidentified person. In any event, the service was terminated and plaintiff’s telephone was removed from her premises on one of those two dates.
It is quite clear, and defendant concedes, the plaintiff was not engaged, and never had been engaged, in illegal gambling or any other kind of illegal activity. The error made by the New Orleans Police Department was discovered by the defendant on May 28, 1971, after the service had been terminated and the telephone removed.
Relative to the issue of liability, the pertinent legal authority is LSA-R.S. 45:1166 (C), which reads:
“When any common carrier, subject to the jurisdiction of the Louisiana Public Service Commission, is notified in writing by a federal, state or local law enforcement agency, acting within its jurisdiction, that any facility furnished by it is being used or has been used for the purpose of transmitting or receiving gambling information in violation of federal, state, or local law, and an arrest has been made in connection therewith, it shall discontinue or refuse, the leasing, furnishing, or maintaining of such facility, after reasonable_ notice to the subscriber, but no damages, penalty or forfeiture, civil or criminal, shall be found against any common carrier for any act done in compliance with any notice received from a law enforcement agency. Nothing in this section shall be deemed to prejudice the right of any person affected thereby to secure an appropriate determination, as otherwise provided by law, in a federal court or in a state or local tribunal or agency, that such facility should not be discontinued or removed, or should be restored.” (emphasis ours).
*498 In the trial court and here plaintiff contended and contends she is entitled to damages because the defendant failed to afford her reasonable notice of its intention to disconnect her service. The trial judge did not agree with the contention. He construed the clause “but no damages, penalty or forfeiture, civil or criminal, shall be found against any common carrier for any act done in compliance with any notice received from a law enforcement agency” to mean that the defendant could not be cast in judgment because it had absolute immunity from suit even if reasonable notice to the subscriber was not given.
We do not agree with the reasoning or the result reached by the trial court. Courts must give effect to a statute as a whole, and no sentence, clause or word should be construed so as to render it meaningless or mere surplusage if a construction can be legitimately placed thereon which would give force and effect to all of the provisions of the statute.[1] We cannot hold the phrase “after reasonable notice to the subscriber” has no meaning. To do needlessly would remove a mandatory duty imposed upon the defendant by the statute.
 In its last sentence the statute itself gives meaning to the “reasonable notice” provision. The last sentence clearly states nothing in the section shall deprive a person of the right to obtain a court or administrative determination that the facility should not be discontinued. Stated another way, the last sentence provides that before a facility such as a telephone can be removed, the subscriber is entitled to protest the legality of the proposed removal before a proper court or administrative body. In this light, the phrase “after reasonable notice” must be construed to mean that a subscriber whose telephone service has been ordered discontinued by a police agency is entitled to sufficient notice before discontinuance to enable him to make application for relief to a court or agency and to have that application acted upon.
In this case we need go no further than to say that, whether the plaintiff’s service was discontinued on May 26, 1971 (the day on which she received notice) or two days later on May 28, 1971, the notice did not afford plaintiff sufficient time to obtain or apply for any judicial or other similar relief.
We now address ourselves to the question of quantum. Plaintiff is a 56 year old widow who lives alone. At the time of the termination of her telephone service she was under the care of a physician for a heart condition for which she was required to take nitroglycerin and lib-rium. Her 93 year old mother lived with her sister; both of them were ill; and on some occasions it was necessary for plaintiff to go to her sister’s residence to care for her mother while the sister sought medical attention for herself. During the course of the interruption in the service plaintiff was required to use her neighbor’s telephone to contact her sister, and on the day of the disconnection plaintiff’s niece, apparently through fear or apprehension for her aunt’s health or safety, physically went to the plaintiff’s home when a telephone call resulted in a notification by a defendant employee that plaintiff’s telephone had been disconnected.
Plaintiff did not suffer any pecuniary loss. But, without doubt, she suffered worry and inconvenience because of the loss of telephone service from May 26 until the time of its resumption, particularly because she lived alone, had a heart condition which might require use of her telephone in the event of an attack, and had an elderly mother who was sick and who might at any time have to summon her aid. Moreover, plaintiff was subject to the embarrassment of having people know her telephone service was discontinued because *499 it was alleged she was engaged in illegal gambling activities. Persons at the telephone company knew of this fact and the plaintiff’s friends, family and immediate neighbors must have been aware that something unusual was occurring to her because of the discontinuance of service.
On the other hand, plaintiff received no notoriety because of the disconnection, the matter was not placed in the newspapers or other news media, and she was not contacted by the police department. In addition, shortly after defendant discovered the error it made attempts to contact plaintiff and her attorney for the purpose of resuming her telephone service and we are satisfied a much earlier reinstallation of the telephone and resumption of the service was prevented by delays attributable to plaintiff or her attorney. The service was resumed on August 10, 1971.
We have not been furnished, nor can we find, any authority in point regarding quantum in this type of case. An analogy is presented by those cases in which a telephone company is sued for improperly listing or failing to list its subscriber’s name and telephone number. In such cases, with the exception of actual out-of-pocket expenditures, the plaintiff has only been awarded nominal damages in the absence of proof of loss of clientele, earnings, or of a disruption of his lifestyle.[2] However, where damage is actually proved with reasonable certainty, the courts have not been reluctant to make an award where the telephone company has failed to properly list a subscriber’s name.[3]
Considering all of the facts in the present case, we are of the opinion the sum of $750 is adequate to compensate plaintiff.
For the foregoing reasons, the judgment appealed from is reversed and it is now ordered that there be judgment in favor of the plaintiff, Mrs. Isabelle Simion, widow of Anthony Shelby, and against the defendant, South Central Bell Telephone Company; in the full sum of $750, together with legal interest thereon from date of judicial demand until paid; defendant to pay all costs in both courts.
Reversed.

. Johnson v. Sewerage District No. 2 of Parish of Caddo, 239 La. 840, 120 So.2d 262; Post Office Employees Credit Union v. Morris, La.App., 183 So. 609.

. See Weinberg v. Southern Bell Telephone & Tel. Co., La.App., 174 So.2d 178, certiorari denied 247 La. 1031, 175 So.2d 645, where the court awarded a physician $250 as nominal damages when he proved no actual loss of patients, earnings or a disruption in his private life. See also Levy v. Southern Bell Telephone & Telegraph Co., La.App., 172 So.2d 371.

. See Mayeaux, Bennett, Hingle Ins. A. v. Southern B. T. & T. Co., La.App., 148 So.2d 771, certiorari denied, 244 La. 131, 150 So.2d 589, where the plaintiff insurance agency was awarded $2,500 in damages. See also Scheinuk The Florist, Inc. v. Southern Bell T. & T. Co., La.App., 128 So.2d 683, where a florist was awarded $1,500 plus expenses.