Lola E. MILLER, Respondent,

v.

MID–CENTURY INSURANCE COMPANY, Appellant.

No. WD 49004.

Missouri Court of Appeals, Western District.

Jan. 10, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1995.

Application to Transfer Denied April 25, 1995.

Donald P. Herron, Kansas City, for appellant.

Thomas E. Hankins, Gladstone, for respondent.

Before SPINDEN, P.J., and LOWENSTEIN and ELLIS, JJ.

SPINDEN, Presiding Judge.

Mid–Century Insurance Company complains of the trial court's holding it liable for damages arising from an automobile crash although it did not insure either of the vehicles involved. Mid–Century's insured was the employer and father of one of the drivers. We affirm the trial court's judgment.

The mishap occurred on February 9, 1990, when a pickup driven by Daniel Wheeler collided with a car driven by Lola Miller in Claycomo. Wheeler's brother, Roger, owned the pickup, and it was insured by Farmers Insurance Company, Inc. Miller sued the Wheelers and their father, George Wheeler.[1] In her petition, she alleged that George was liable for his son's negligence under a theory of *respondeat superior* because Daniel was driving the pickup to get a load of bricks to use in a job obtained by George's business, WW Masonry. On November 30, 1992, the court entered judgment against Daniel and George, jointly and severally, for $150,000. Farmers paid Miller $25,000, the full limit of its policy.

On January 19, 1993, Miller sought further satisfaction of her judgment against the Wheelers by filing this garnishment action against Mid–Century, which insured George's pickup, although the pickup was not involved in Miller's collision with Daniel. Mid–Century's policy said that the company would "pay damages for which [George] is legally liable because of bodily injury to any person and property damage arising out of the ownership, maintenance or use of a private passenger car, a utility car, or a utility trailer."[2]

Miller's theory was that, although George's pickup was not involved in Daniel's crash with her, Mid–Century's policy covered any liability by George for losses arising from the use of a vehicle driven by anyone. The trial court agreed and, on December 28, 1993, ordered it to pay Miller $50,000.

When construing an insurance contract, the courts must give the contract's language its plain meaning, and, if the language is unambiguous, the courts must enforce the contract as written. *Hempen v. State Farm Mutual Automobile Insurance Company*, 687 S.W.2d 894, 894–95 (Mo. banc 1985). An insurance policy is ambiguous if its meaning is obscure or uncertain. *Peters v. Employers Mutual Casualty Company*, 853 S.W.2d 300, 302 (Mo. banc 1993). The policy which Mid–Century issued to George was ambiguous.

Mid–Century obviously did not intend to cover all losses arising from the use of any motor vehicle of whatever kind. The policy restricted its coverage to losses arising from three types of vehicles, all defined by the policy: a private passenger car, a utility car, or a utility trailer. No one contends that Roger's pickup was a trailer. Miller says it was a private passenger car. Mid–Century says it was neither a private passenger car nor a utility car.

The policy defined a private passenger car as "a four wheel land motor vehicle of the private passenger or station wagon type actually licensed for use upon public highways. It includes any motor home with no more than six wheels and not used for business purposes."

On first reading, we interpreted this definition as referring to the *style* or *type* of automobile as opposed to how the vehicle was *used:* that its focus was private passenger and station wagon body types—not whether the vehicle was used to carry nonpaying passengers. Our confidence in that interpretation was bolstered when we read the definition of "utility car:" "a land motor vehicle having at least four wheels actually licensed for use upon public highways, with a rated load capacity of not more than 2,000 pounds, of the pickup, panel or van type. This does

---

1. To assist the reader, we will refer to the Wheelers by their first names.

2. Some of the words were printed in bold type in the original. That a word was printed in bold type was a signal that the policy defined the word. As we quote from the policy throughout this opinion, we will remove the bold type.

not mean a vehicle used in any business or occupation other than farming or ranching." Again, the definition seemed to focus on body *types:* pickups, panels and vans. Not all vehicles of these body types were included in the definition—only those not used for business, unless that business is farming or ranching.

We concluded that because Roger's vehicle was a pickup, it would not fit the definition of a private passenger car. It was the wrong body type. The pickup seemed to fit in the utility car definition where pickup body types were specifically mentioned. Roger's pickup, however, did not fit that definition either because Daniel was using it for business purposes when it collided with Miller's vehicle. From this, we concluded that Roger's pickup was neither a private passenger car nor a utility car; it was part of a large group of motor vehicle types the policy did not intend to cover: motorcycles, 18–wheelers, tractors, buses, Sherman tanks, snowmobiles, and others.

Then, we turned to the policy's exclusion section where the policy explained what Mid–Century would not cover. There, we met a provision which directly contradicted our interpretation of the definitions. Exclusion No. 6 provides that Mid–Century would not cover:

> Bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle by any person employed or otherwise engaged in a business other than [transporting, selling, repairing, servicing, storing or parking vehicles].[3] This exclusion does not apply to the maintenance or use of a:
>
> a. Private passenger car.
> b. Utility car that you own, if rated as a private passenger car[.]

3. This clause cannot mean what it says. By focusing on the occupation of the person using the vehicle ("use of any vehicle by any person employed"), the clause excludes coverage of any loss created by a person who has a job which does not involve transporting, selling, repairing, servicing, storing, or parking vehicles. Taken literally, this provision means that because Daniel had a job, the policy would not cover his wreck with Miller even had he been on his way to the golf course rather than to pick up a load of bricks. Had he been unemployed, the exclusion

The exclusion directly contradicts the policy's definition of a utility car which excluded pickups, vans, and panel type vehicles "used in any business or occupation other than farming or ranching." By that definition, a utility car could never be used in business, no matter who owned it and how it was rated. In direct contradiction, the exclusion made an exception for utility cars used in business which the insured owned and were rated as private passenger cars. If a vehicle used in business could not, by definition, be a utility car, then no vehicle would ever fall within the exclusion's exception.

Rather than concluding that the exclusion was a nonsensical, internal contradiction, we endeavored to harmonize it with the remainder of the policy. This caused us to reconsider the definition of private passenger car because the exclusion demonstrated that Mid–Century did not intend to bar all utility cars from the definition. The exclusion suggested that the definition of private passenger car intended to include any vehicle intended to be *used* to transport private passengers. (Note the phrase in the exclusion, "if rated as a private passenger car." [4])

That would include Roger's pickup. As a Louisiana court noted:

> Certainly, pickup trucks are used as private passenger automobiles by a growing number of people. Most citizens would be surprised to learn that their insurance policies intend a distinction between their use of a neighbor's car and his pickup. For this reason, we feel that if pickup trucks are to be excluded from the description of private automobiles, this exclusion should be specific and easily understood by the general public.

would not have applied. This is absurd. We conclude that the conjunction "while" is missing and that the provision should read: "use of any vehicle by any person [while] employed or otherwise engaged in a business[.]" This has the effect of excluding coverage of any car being used for business purposes different than the mentioned businesses.

4. This phrase alone is ambiguous. Who is to rate the vehicle?

*Riker v. Aetna Casualty and Surety Company,* 286 So.2d 493 (La.App.1974).

We were left in a quandary, however, as to what to do with the reference to station wagons and motor homes in the definition of private passenger cars. The definition defined a private passenger car as "a four wheel land motor vehicle of the private passenger or station wagon type[.]" Because station wagons and motor homes are used to carry passengers, the definition's specific reference to them would be rendered mere surplusage if we were to read the definition as referring to all vehicles used to carry private passengers.

Hence, we found ourselves squarely in the face of a dilemma: either we could opt for the plain meaning of the definitions and ignore the contradicting exclusion, or we could read the definitions in harmony with the exclusion but deem some of the definitions' language to be mere surplusage.[5]

This is what the Supreme Court has called an ambiguity: "when there is duplicity, indistinctness, or uncertainty in the meaning of words[.]" *Peters,* 853 S.W.2d at 302. The Supreme Court has instructed, "If the language [of an insurance policy] is ambiguous, it will be construed against the insurer." *Id.*

This means that we should opt for the construction which results in coverage for George. Hence, we conclude that the trial court was correct in its judgment in finding that Mid–Century had obligated itself in the policy to cover George for his liability to Miller. We affirm.

All concur.

---

**5.** Another option would be to deem the exclusion's reference to utility car to be an exception to the policy's definition of utility car. The definition already expressed an exception: "This does not mean a vehicle used in any business or occupation other than farming or ranching." The exclusion would become an exception to an exception. This, with the internal contradiction and lack of cross referencing, would render the policy hopelessly confusing and certainly ambiguous. Had Mid–Century intended this result, we would have expected the definition's exception to read: "This does not mean a vehicle used in any business or occupation other than farming or ranching unless the insured owns the vehicle and it is rated as a private passenger car."