664 So.2d 542 (1995)
Josephine COUTEE, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants-Appellees.
Wilmon J. COUTEE, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants-Appellees.
Nos. 95-269, 95-270.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1995.
*543 Jeffrey Howerton Thomas, Ted David Hernandez, Natchitoches, for Josephine Coutee in No. 9500269.
Jeffrey Howerton Thomas, Ted David Hernandez, Natchitoches, for Wilmon J. Coutee in No. 9500270.
James Michael Edwards, Monroe, for State Farm Mutual Auto Insurance Co. in both cases.
Before DOUCET, C.J., and AMY and SULLIVAN, JJ.
SULLIVAN, Judge.
This personal injury case arises out of an automobile accident. Plaintiffs, Wilmon "Jimmy" Coutee and Josephine Coutee, appeal a verdict in which the jury (1) found Mr. Coutee 80% at fault in causing the accident and (2) awarded general and special damages of $20,000 to Mr. Coutee and $3,000 to Mrs. Coutee. For the following reasons, we increase the award to Mrs. Coutee but otherwise affirm the jury's findings.

FACTS
The accident, a head-on collision between two nearly identical Ford pick-up trucks, occurred on July 15, 1991 on La. Hwy. 505 in Jackson Parish. Hwy. 505 is a rural, two lane road with a posted speed limit of 55 mph at the accident site. At approximately 10:30 that morning, Coutee, with his wife as a passenger, attempted to make a left hand turn from the westbound lane of Hwy. 505 onto a private drive at the Wyatt Manor Nursing Home. At the same time, defendant, Lynn Tharpe, was approaching from the east, having just rounded a curve located about 550' from the nursing home. Tharpe and his passenger, Calvin Costen, occupied a vehicle owned by their employer, Louisiana Gas Company, and insured by United States Fidelity and Guaranty Company.
Tharpe testified that as he exited the curve he heard Costen warn him to "watch out" and he saw the Coutee vehicle protruding three to four feet in his lane of travel. Although Tharpe immediately applied his brakes, they locked and he could not avoid the collision. He estimated his speed before braking to be 50 mph.
Both Coutee and Tharpe believed that they were in their respective lanes of travel at the time of impact. However, physical evidence at the scene established that both vehicles were across the center line, with the collision occurring in the center of the road. The investigating officer, Trooper Marshall Lyles, determined that, at the point of impact, the Coutee vehicle was between three and four feet over the center line and the Tharpe vehicle was approximately one foot over. Skid marks left by the Tharpe vehicle began in the eastbound lane but veered to the left over the center line. The wheels of the Coutee vehicle were turned to the right at the time of impact, indicating that evasive action was attempted before the crash. From the length of the skid marks and the final resting point of each vehicle, Trooper Lyles estimated that the Tharpe vehicle was traveling at least 55 mph before braking, while the Coutee vehicle was at a complete stop when it was hit.

JURY INSTRUCTIONS AND ALLOCATION OF FAULT
Plaintiffs first argue that the jury verdict is tainted because the trial judge's instructions regarding the sudden emergency doctrine were incomplete. The trial court instructed the jury, generally, that one who finds himself in a position of peril without sufficient time to weigh and consider all circumstances is not required to exercise such control or degree of care as is required of one who has ample opportunity for full exercise of reason. The trial court refused to give two charges requested by the plaintiffs to the effect that the sudden emergency doctrine cannot be invoked by one who has created the emergency by his own wrong or *544 has not used due care to avoid it. Plaintiffs argue that the omission of these charges permitted the jury to ignore any evidence of Tharpe's excessive speed or otherwise imprudent conduct if the jury found that Tharpe was faced with a "sudden emergency."
We agree that the trial judge erred in refusing to instruct the jury as requested by plaintiffs. The charge as given by the trial court is not a complete statement of the sudden emergency doctrine. See Knickles v. United Cab Company, Inc., 505 So.2d 114 (La.App. 4 Cir.1987). Nonetheless, we find that the jury charges, when viewed in their entirety, adequately instructed the jurors that their verdict should reflect any negligence which they attributed to Tharpe. In addition to generally charging the jury on the principles of comparative fault, the trial judge gave as a special charge the following:
A finding of negligence in one party because of having been in the improper lane does not foreclose a finding of negligence in the other because of some other, concurrent fault which is also a cause in fact of the accident.
In Kessler v. Southmark Corporation, 25,941, at pp. 4, 5 (La.App. 2 Cir. 9/21/94); 643 So.2d 345, 349, the court offered the following guidance in dealing with an erroneous jury instruction:
Ordinarily, factual findings of the jury are accorded great weight and may not be disturbed by the appellate court in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stovall v. Shell Oil Co., 577 So.2d 732 (La.App. 1st Cir.1991), writ denied, 582 So.2d 1309 (La. 1991). However, when the jury verdict is based on instructions which are faulty in a critical regard, the verdict is tainted and not entitled to a presumption of regularity. Dupuy v. Rodriguez, 620 So.2d 397 (La. App. 1st Cir.1993), writ denied, 629 So.2d 352 (La.1993); Stovall, supra. On the other hand, adequate jury instructions are those that fairly and reasonably point up the issues and provide correct principles of law for the jury to apply to those issues. Dupuy, supra. The pertinent inquiry in making a determination whether a jury verdict should be overturned on the basis of an erroneous jury instruction is whether the jury was misled to such an extent that it was prevented from doing justice. Hickman v. Albertson's, Inc., 598 So.2d 1128 (La.App. 2d Cir.1992), writ denied, 600 So.2d 618 (La.1992). [Emphasis added.]
Although the trial court's charges on the sudden emergency doctrine were incomplete, we cannot conclude that this error prevented the jury from doing justice in light of the other charges that were given. See Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 3110, 3112 (La. 7/5/94); 639 So.2d 216. The jury was adequately informed as to the principles of comparative negligence and did assess a percentage of fault to defendant Tharpe. Therefore, we will review the jury's allocation of fault under the manifest error-clearly erroneous standard.
Plaintiffs contend that this accident was caused primarily by Tharpe's excessive speed and by his failure to take the more prudent evasive action of steering to the right onto the shoulder rather than simply applying his brakes. The jury, however, viewed Coutee's aborted left hand turn and intrusion into Tharpe's lane of travel as the primary cause of this accident.
After a review of the record, we cannot conclude that the jury's finding is manifestly erroneous. The three experts who testified estimated Tharpe's speed between "at least 55 mph" and 67 mph in a 55 mph zone. Plaintiffs contend that Tharpe, who knew the area well, should have realized that even the posted speed limit was unsafe because of the presence of the nursing home, whose residents often wandered near the roadway. However, there is nothing in the record to suggest that the presence of nursing home residents contributed to this accident. Prior to the accident, Tharpe successfully negotiated a reverse "S" curve in the road. When Tharpe applied his brakes, he was entirely within his own lane of travel and his vehicle at all times remained in a forward position. At least one expert testified that Tharpe's decision to brake, as opposed to steering to the right, was an appropriate response.
*545 Coutee, on the other hand, attempted a left hand turn, universally regarded as a dangerous maneuver, without maintaining a proper lookout. The position of his vehicle's wheels turned to the right indicates that he realized his mistake before the crash. In Babineaux v. Tollie Freightways, Inc., 628 So.2d 1327 (La.App. 3 Cir.1993), this court affirmed a finding of 75% fault to a left turning motorist and 25% to an oncoming motorist who failed to stop in time to avoid the collision. In Keeth v. Department of Public Safety and Transportation, 618 So.2d 1154 (La.App. 2 Cir.), appeal dismissed, 619 So.2d 563 (La. 1993), the court recognized that applying one's brakes instead of steering is an appropriate response when confronted with an obstruction in one's lane of travel, even though it may not be the most prudent response. Based upon the above, we find no error in the jury's allocation of 80% fault to Coutee and 20% fault to Tharpe.

DAMAGES
Coutee contends that as a result of this accident he sustained a complete tear of his left shoulder rotator cuff and injuries to his left hip that required the surgical repair of a previous total hip replacement performed in 1986. The hip surgery that Coutee relates to this accident was not performed until 1993. The jury impliedly rejected any causal connection between the hip injury and the accident, awarding Coutee medical expenses of $6,000 (the approximate expenses for the shoulder injury) and general damages of $14,000.
On the date of this accident, July 15, 1991, Coutee was 73 years old. In 1986, he underwent a total left hip replacement as the result of injuries sustained in 1974.
Immediately after this accident, Coutee was taken by ambulance to Jackson Parish Hospital and then to Rapides General Hospital. The admitting physician at Jackson Parish Hospital, Dr. Ta Yu Huang, testified that Coutee's chief complaints were pain in the left shoulder, left elbow and left leg. He diagnosed Coutee's condition as multiple contusions, back sprain and a superficial laceration of the left knee. According to Dr. Huang, Coutee made no specific complaints of left hip pain to him.
At Rapides General, Coutee's condition was monitored by Dr. Bernard Kaplan, a general practitioner, and Dr. Ray Beurlot, the orthopedic surgeon who performed Coutee's total hip replacement in 1986. Dr. Kaplan ordered several x-rays, including one of the left pelvis, all of which revealed no traumatic abnormalities. Dr. Beurlot noted marked tenderness, pain and bruises of the left shoulder. Coutee's inability to move his left arm away from his body indicated to Dr. Beurlot either a partial or complete tear of the left rotator cuff.
After his discharge from the hospital, Coutee continued to see Dr. Beurlot for his shoulder injury through December of 1991. During this time, Coutee complained of moderate to severe shoulder pain, but no hip pain. An MRI of August 8, 1991 confirmed Dr. Beurlot's diagnosis of a complete rotator cuff tear. When conservative treatment such as cortisone injections produced no significant improvement, Dr. Beurlot considered shoulder surgery an option, even though Coutee's advanced age suggested that the surgery had only a 50/50 chance of success. Although Coutee was actually admitted to the hospital for surgery, the procedure was never performed because pre-operative studies revealed a mass in Coutee's chest. On December 9, 1991, Coutee's last visit for the shoulder injury, Dr. Beurlot noted that he was still in moderate pain. Dr. Beurlot assigned Coutee a 60-75% impairment of the left shoulder.
Coutee did not return to Dr. Beurlot again until May of 1993, then complaining of left hip pain. Ultimately, Dr. Raoul Rodriguez of Tulane Medical Center performed a surgical revision of Coutee's total hip replacement. During this operation, Dr. Rodriguez discovered that the hip prosthesis was cracked, a finding that he considered consistent with Coutee's history of trauma.
Dr. Beurlot, however, could not conclude that the accident of July 15, 1991 was the sole cause of Coutee's second hip operation. He noted that on three times before this accident, in October and November of 1990 and in February of 1991, Coutee had complained *546 of thigh pain that had worsened in 1989 and 1990. A possible revision of the total hip replacement was discussed as early as October of 1990, when x-rays had revealed some erosion of the stem of the prosthesis. After February of 1991, Coutee did not complain of hip pain again until May of 1993.
Dr. Beurlot testified that a hip replacement usually lasts eight to ten years. However, before this accident, Dr. Beurlot observed a loosening of the femoral component which indicated that a revision was inevitable. Dr. Beurlot did believe that the accident reduced the time frame when the second surgery was required.
Plaintiffs contend that the pelvic x-ray taken immediately after the accident and the laceration on Coutee's knee, combined with Dr. Rodriguez's testimony, sufficiently show a causal connection between the accident and the second hip operation. We disagree. The x-ray that Dr. Kaplan ordered was only one of a series, all of which were normal. Dr. Huang testified that laceration was only superficial, probably not even requiring stitches. Although Dr. Rodriguez did relate the hip injury to the accident, he did not examine Coutee until two years later and he did not have the benefit of Dr. Beurlot's detailed history. From Dr. Beurlot's testimony, the jury could have reasonably concluded that the accident only hastened the second operation. We find no error in the jury's decision to award Coutee general and special damages for the shoulder injury only.
Nor do we find error in the jury's award of total general damages of $14,000. Coutee did sustain a substantial disability to his left shoulder. Yet, the jury could have concluded that Coutee, at 73, had other health problems that restricted his formerly active lifestyle. In Talamo v. Shad, 619 So.2d 699 (La.App. 4 Cir.), writ denied, 625 So.2d 175 (La.1993), the court affirmed an award of $15,000 to a 23 year old woman who would suffer flare-ups of biceps tendinitis for the rest of her life. Higher awards for chronic shoulder injuries have generally involved the plaintiff enduring some surgical procedure. See, for example, K-Oil Rental & Supply, Inc. v. Town of Gueydan, 535 So.2d 427 (La.App. 3 Cir.1988). We find no abuse of the trier of fact's "vast" discretion in this case. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Plaintiffs also appeal the amount awarded to Mrs. Coutee. The jury awarded Mrs. Coutee $2,500 in medical expenses and $500 in mental pain and suffering. The jury did not award any damages for physical pain and suffering or for loss of consortium. Plaintiffs contend that we should review Mrs. Coutee's award de novo because the jury committed legal error in not awarding damages for physical pain and suffering when Mrs. Coutee presented objective evidence of physical injury. We disagree. Because the jury did award some general damages, we find that the manifest error standard applies.
Mrs. Coutee was hospitalized for five days after the accident, complaining of back and chest pains. The discharge summary described her condition as "multiple rib fractures and contusions." She received follow up care for approximately four months after which she was released with no restrictions or disability.
In addition to a soft tissue back injury, Mrs. Coutee presented objective evidence that she sustained at least one fractured rib in the accident. After considering the length of her hospital stay and follow up care, we agree that only $500 in general damages is an abuse of discretion. We find that the lowest award the record supports for Mrs. Coutee's injuries is $4,000.
We find no error, however, in the jury's rejection of Mrs. Coutee's loss of consortium claim. Although the Coutees at one time enjoyed an active lifestyle, the jury could have concluded that any decline in the Coutees' activities together was caused by Mr. Coutee's hip problems or other ailments. See Thompson v. American National Fire Ins. Co., 617 So.2d 171 (La.App. 3 Cir.), writ denied, 620 So.2d 843 (La.1993).
Finally, plaintiffs object to the trial court's division of court costs at 80% to the Coutees and 20% to the defendants. Because we *547 have not disturbed the jury's allocation of fault, we decline to reassess the trial court costs. Costs of this appeal are assessed to the Coutees.
For the above reasons, the judgment of the trial court is amended to increase Mrs. Coutee's general damages to $4,000. In all other respects, the judgment is affirmed.
AFFIRMED AS AMENDED.