697 So.2d 1030 (1997)
Steven A. FONTANA
v.
LOUISIANA SHERIFFS' AUTOMOBILE RISK PROGRAM.
No. 96 CA 1579.
Court of Appeal of Louisiana, First Circuit.
June 20, 1997.
Rehearing Denied August 20, 1997.
*1031 Danny J. Lirette, Houma, for Plaintiff-Appellee Steven A. Fontana.
James L. Selman, II, New Orleans, and Michele W. Crosby, Baton Rouge, for Defendant-Appellant Alliance General Insurance Co.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
LOTTINGER, Chief Judge.
On January 3, 1993, at approximately three o'clock in the morning, plaintiff-appellee, Steven A. Fontana, a sergeant with the Terrebonne Parish Sheriff's Department, was patrolling East Tunnel Boulevard in Houma, Louisiana. Upon exiting the tunnel, Fontana observed a gray vehicle approaching from the opposite direction, apparently preparing to make an illegal u-turn. Fontana slowed his patrol car to approximately twenty-five miles per hour to observe the vehicle. After it aborted the attempted illegal u-turn, Fontana proceeded to resume his previous speed of approximately thirty-five miles per hour.
Micheal Bourgeois, who admitted to being intoxicated at the time, was traveling behind Fontana at a rate of approximately forty miles per hour. Bourgeois vaguely recalls seeing Fontana's taillights for the first time as he emerged from the tunnel. Without slowing down, Bourgeois swerved to the right but could not avoid striking the right rear of Fontana's vehicle.
After the accident, Fontana turned on his emergency strobe lights, checked on Bourgeois and called the sheriff's office. While waiting for assistance, Fontana took out his *1032 flashlight and directed traffic around the accident scene. When other units arrived and the scene was secured, he drove himself to the Terrebonne General Medical Center emergency room. Fontana was initially diagnosed with a cervical strain and left shoulder contusion. A few weeks after the accident, Fontana returned to light duty work as an assistant warden. Upon his return, Fontana received a promotion to lieutenant and a pay raise.
Fontana was treated conservatively for several months after the accident. However, with continued complaints of pain, severe headaches and a positive discogram, Fontana underwent a two level anterior cervical discectomy and fusion on November 17, 1993. Dr. Charles Billings, Fontana's orthopedic surgeon, testified that following the surgery Fontana had "substantial relief of his symptoms." On February 1, 1994, Fontana was released for restricted work and returned to his post as an assistant warden. Dr. Billings saw Fontana again in April of 1994. At that time, Dr. Billings noted a "satisfactory postoperative course" and that Fontana was working on a daily basis.
At trial Dr. Billings testified that, "[h]is clinical course was looking good, I think he was improving after his surgery, and then some episode happened." Dr. Billings' office notes of May 3, 1994, refer to this episode, "[Fontana] [r]eturned to the office, pain had improved until last week when grabbed by a defense instructor." Fontana also described this episode in detail on cross examination, "I was watching [a defensive tactics class] with my hands folded, leaning against a table, while [the instructor] was doing some defensive tactics, ... [the instructor] grabbed me by the hair, grabbed me by the chin and twisted my neck, made me turn a pale white, cold, and liked to pass out ... It was about May or June." On cross examination Dr. Billings stated that, "based on his clinical course, [I] would have anticipated that had he not have had that defense instructor episode, that he would have had substantially less pain at the present time. I think he would still had some but I think it would be substantially less."
At trial, Fontana also related a second post surgery incident. In October of 1995, Fontana was involved in an altercation in the parking lot of a restaurant. Fontana described being attacked by several individuals, pushed into a brick wall where he hit his head, and then beaten in the back of the head until he passed out. Although Dr. Billings had no record of this traumatic event, he stated that such an episode could be the cause for Fontana's continued pain.
As of the date of trial, Fontana had not been released by Dr. Billings or Dr. Paul Kantack, his psychiatrist. Neither doctor believes that Fontana is capable of returning to his position with the sheriff's department. Dr. Billings assigned a permanent anatomical impairment of 25% to Fontana and placed physical restrictions on lifting, overhead work and arm extension.
Fontana filed the instant lawsuit against several parties[1] including defendant-appellant, Alliance General Insurance Company (Alliance), the uninsured motorist carrier for the sheriff's department. Prior to trial, Alliance filed a motion for summary judgment on the issue of punitive damages. The trial judge granted this motion effectively denying Fontana's request for punitive damages. After a three day trial, at which Alliance was the only remaining defendant, the jury returned a verdict for Fontana in the total amount of $268,750.00. Alliance's motion for new trial was denied. Alliance appeals asserting that:
1. The jury abused its discretion in awarding any damages for loss of future earning capacity related to this accident; alternatively, the award was excessive and must be reduced.
2. The trial court abused its discretion when it refused to allow defense counsel to *1033 cross-exam Dr. Kantack regarding his biased disability findings.
3. The jury's award of $100,000.00 for general pain and suffering and $25,000.00 for disability was excessive and an abuse of discretion and should be reduced.
4. The trial judge erred by failing to properly instruct the jury regarding a following motorist's duties and the sudden emergency doctrine; this error led to the jury's erroneous conclusion that plaintiff Fontana was not at fault.
5. The trial court manifestly abused its discretion in denying Alliance's Motion for New Trial.
Fontana answered the appeal requesting an increase in the amount of damages and a reversal of the trial judge's grant of summary judgment on the issue of punitive damages.

ASSIGNMENT OF ERROR ONE
In its first assignment of error, Alliance contends that the jury abused its discretion in awarding any damages for loss of future earning capacity. Alliance notes that following the accident and surgery, Fontana returned to work at a higher rate of pay. He was working on a daily basis with substantial relief from his symptoms. Unfortunately, Fontana was re-injured during a defensive tactics class and experienced an increase in symptoms. Alliance asserts that this evidence overwhelmingly points to the conclusion that had Fontana not sustained the second injury in the defensive tactics class, he could have continued to work. Alliance asserts that the jury abused its discretion in failing to sort out the damage caused by the second work related injury from the damage caused by the automobile accident.
In a personal injury suit, the plaintiff bears the burden of proving the existence of the injury as well as the connection between the injury sustained and the accident which caused the injury. Lewis v. State Department of Transportation and Development, 94-2370, p. 3 (La.4/21/95); 654 So.2d 311, 313. To obtain an award for future loss of wages and/or loss of earning capacity, a plaintiff must present evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident. Aisole v. Dean, 574 So.2d 1248, 1252 (La.1991).
In the instant case, the evidence clearly established that Fontana sustained an injury in the automobile accident caused by the fault of Micheal Bourgeois. Fontana underwent an anterior cervical discectomy and fusion to repair the injury. As a result of the surgery, Dr. Billings assigned a permanent anatomical impairment of 25% and placed certain work restrictions on Fontana.
The evidence also clearly established that following the surgery, Fontana sustained a second work related injury. According to Dr. Billings' notations, this work related injury probably occurred during the last week of April. Following this incident, Fontana experienced an increase in pain. However, Dr. Billings also indicated that even without this incident Fontana would still be experiencing pain.
At trial, Fontana also testified that after surgery, in about April, May or June of 1994, he began working longer hours. He stated that the extended hours caused fatigue, increased headaches and neck pain. To relieve the pain associated with this change, Fontana began taking more medication and taking time off.
If the trial court or jury's finding are reasonable in light of the record reviewed in its entirety, those findings cannot be reversed on appeal, even if the appellate court would weigh the evidence differently. Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1277 (La.1991). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
Alliance asserts that the evidence points unerringly to the conclusion that had Fontana not sustained the second work related injury, he could have continued working in the same job. We note, however, that the evidence also reasonably supports the conclusion that because of the surgery and extended work hours, Fontana began experiencing increased pain and began missing work prior to the second injury. Based on the evidence *1034 presented, the jury could reasonably conclude that all or part of Fontana's loss of future earning capacity was attributable to the automobile accident. Because the jury chose between two permissible views of the evidence, it cannot be said that the jury abused its discretion in deciding to award damages for loss of earning capacity.
Furthermore, we do not find the award to be arbitrarily low as suggested by Fontana. An award for loss of earning capacity is inherently speculative and not always calculable with mathematical certainty, thereby subject to the discretion of the factfinder. Morris v. State Department of Transportation, 94-2545, p. 10 (La.App. 1 Cir. 10/6/95); 664 So.2d 1192, 1198, writ denied, 95-2982 (La.2/9/96); 667 So.2d 537. Great deference should be given to the factfinder in reviewing an award for loss of earning capacity and such an award should not be set aside absent an abuse of discretion. Id.
Dr. George Randolph Rice, a professor of economics, offered uncontradicted testimony as to Fontana's future loss of earning capacity. Although the jury's award of $80,000.00 was lower than any of Dr. Rice's estimates, we do not consider the award arbitrarily low in light of the testimony regarding the second work related injury which the jury could have determined partially contributed to Fontana's loss of earning capacity.
For these reasons, we affirm the jury's award for loss of earning capacity.

ASSIGNMENT OF ERROR TWO
In its second assignment of error, Alliance contends that the trial court abused its discretion by refusing to allow Alliance to cross-examine a witness regarding bias.
During cross-examination of Dr. Kantack, Fontana's psychiatrist, counsel for Alliance engaged in the following line of questioning regarding Fontana's disability status as stated on a form signed by the doctor:
Q. I have a form here from your records dated April 18, 1995, signed by you. Apparently this was sent to the sheriff's office concerning his disability status; correct?
A. Yes, okay.
Q. They wanted you to answer four questions.
A. Yes.
Q. You answered that he was incapacitated for his present job. You also stated that he was not able to engage in any other employment.
A. This was April 18, 1995.
Q. Right. Do I take it that you have now changed
A. That was nine months ago, Counselor.
Q. And you have now changed your opinion, and if you filled out this same form today you would check yes next to "Deputy is able to engage in other employment"?
A. Not on this form, Counselor. Not on this form. This form has to do, specifically, with my understanding about his job as a sheriff's deputy, and so no, I would not fill this form out the same. Now you give me some other from, okay, and we may come out with a different conclusion that he can go back to work, but I've already stated that, so what more do you need to know?
Following Dr. Kantack's indication that his disability determination may depend on the type of form he was completing, counsel for Alliance attempted to ask the following question, during which counsel for Fontana objected to the extent that the collateral source rule was implicated:
Q: ... This is the form that he's trying to submit to get disability retirement, and he gets more money out of his disability retirement if you check no here, than if you check yes; is that why you would still do it this way?
In brief, counsel for Alliance represents that the question would have demonstrated bias and did not violate the collateral source rule.
The trial court is granted a broad range of discretion when ruling on the admissibility of evidence, and evidentiary rulings shall not be disturbed on appeal absent a clear abuse of discretion. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, p. 11 (La.App. 1st Cir. 3/11/94); 634 So.2d 466, 476-77, writ denied, 94-0906 (La.6/17/94); 638 So.2d 1094.
*1035 We note that prior to the question in dispute, counsel for Alliance asked several non-objectionable questions regarding the form. Through those questions counsel for Alliance effectively demonstrated Dr. Kantack's willingness to reach a different conclusion regarding Fontana's disability based on the form that he was completing. Upon resuming cross-examination, counsel chose to abandon the line of questioning rather than rephrase the question to avoid any reference to the specific purpose of the form. Considering the entire exchange, we do not find that the trial judge's ruling prevented a thorough cross-examination of the doctor. We do not find that the trial judge abused his broad discretion in sustaining the objection.

ASSIGNMENT OF ERROR THREE
In its third assignment of error, Alliance asserts that the jury's awards for pain and suffering and for disability were excessive and an abuse of discretion and should be reduced. On the other hand, Fontana requests an increase in these damages.
Article 1999 of the Louisiana Civil Code grants the trier of fact "much discretion" in assessing general damage awards. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Before a court of appeal can disturb an award of general damages, the record must clearly reveal that the trier of fact abused its much discretion in making the award. Theriot v. Allstate Insurance Company, 625 So.2d 1337, 1340 (La.1993). The initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion. Theriot, 625 So.2d at 1341; Reck v. Stevens, 373 So.2d 498, 501 (La.1979). The Louisiana Supreme Court has noted on several occasions that with regard to general damage awards:
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Rick v. State, Department of Transportation and Development, 93-1776, 93-1784 (La.1/14/94); 630 So.2d 1271, 1277; Youn, 623 So.2d at 1261; Reck, 373 So.2d at 501.
Considering the second work related injury which may have contributed to Fontana's damages, we cannot say that the jury abused its discretion in awarding Fontana $100,000.00 for pain, suffering and mental anguish and $25,000.00 for disability. We affirm the award.

ASSIGNMENT OF ERROR FOUR
In its fourth assignment of error, Alliance asserts that the trial judge erred by failing to properly instruct the jury regarding a following motorist's duties and the sudden emergency doctrine. Alliance contends that this error led to the jury's erroneous conclusion that Fontana was not at fault in the accident.
In a jury trial, the trial judge need only give those jury instructions which fairly and reasonably point up issues, and which provide correct principles of law for the jury to apply to those issues. Rhodes v. Winn-Dixie Louisiana, Inc., 93-1848 (La.App. 1 Cir. 6/24/94); 638 So.2d 1168, 1173. It is the judge's responsibility to reduce the possibility of confusing the jury, and he(she) may exercise the right to decide what law is applicable. Daigle v. Legendre, 619 So.2d 836, 839 (La.App. 1st Cir.), writ denied, 625 So.2d 1040 (La.1993). If a requested instruction is confusing, misleading or omits an essential element, it is insufficient. Rhodes, 638 So.2d at 1173. An appellate court must exercise great restraint before overturning a jury verdict on a suggestion that jury instructions were so erroneous as to be prejudicial. Daigle, 619 So.2d at 839.
Alliance describes the excluded instructions as relating to a following motorist's entitlement to presume that vehicles ahead of him will drive with due care and a following *1036 motorist's lack of liability for an accident caused by a sudden emergency which he could not have reasonably anticipated.
Initially, we note that the requested instructions were presented by Alliance in a sequence entitled "Stopping on Highway." There was no evidence that Fontana stopped his vehicle. Furthermore, with regard to the sudden emergency doctrine, the requested instructions failed to instruct the jury that the doctrine is inapplicable to one who has created or brought about the sudden emergency or has not used due care to avoid it. See Coutee v. State Farm Mutual Automobile Insurance Company, 95-269, 95-270, p. 3-4 (La.App. 3 Cir. 11/2/95); 664 So.2d 542, 543-44.
The record reveals that the trial judge instructed the jury as to a motorist's duty to maintain a safe distance between other cars and the presumption of negligence in rear-end collisions. The jury was also instructed as to a motorist's duty to drive prudently and maintain proper control and lookout. Furthermore, the trial judge provided instruction with regard to evaluating the comparative fault of Fontana, including Fontana's duty to use ordinary care under the circumstances for his own safety.
After reviewing the jury instructions, we conclude that the trial judge gave instructions which fairly and reasonably pointed up the issues and which provided correct principles of law for the jury's application thereto. Therefore, we find that the trial judge did not err in refusing to give Alliance's requested jury instructions.

ASSIGNMENT OF ERROR FIVE
In its fifth assignment of error, Alliance asserts that the trial judge abused his discretion in denying Alliance's motion for new trial.
A new trial shall be granted when the verdict or judgment appears clearly contrary to the law and evidence and may be granted if there are good grounds therefore. La. Code Civ. Pro. arts. 1972 and 1973. Louisiana jurisprudence is clear that a new trial should only be granted if the trial court, exercising its discretion, is convinced by its examination of the facts that the judgment would result in a miscarriage of justice. Perkins v. K-Mart Corporation, 94-2065, p. 9 (La.App. 1 Cir. 6/23/95); 657 So.2d 725, 731, writ denied, 95-2058 (La.11/13/95); 662 So.2d 477. The trial court has much discretion in determining whether to grant a motion for new trial and its decision to deny a new trial shall not be reversed unless there has been an abuse of this discretion. Id.
Alliance moved for a new trial on the grounds that the jury's assessment of damages and its failure to assess any fault on the part of Fontana was clearly contrary to the law and evidence. Considering our discussion of assignments of error one and three, we cannot say that the jury's damage awards were arbitrarily high and therefore an abuse of discretion. Likewise, the jury's assessment of 100% fault to Bourgeois is supported by the evidence. Because it cannot be said that the jury's verdict was clearly contrary to the law and evidence, we conclude that the trial judge properly denied the motion for new trial.

MOTION FOR SUMMARY JUDGMENT
On the day of trial, the trial judge granted Alliance's motion for summary judgment on the issue of whether Alliance's UM policy included coverage for punitive damages under La. Civ.Code art. 2315.4. In answering the appeal, Fontana seeks reversal of this decision.
Alliance issued an excess liability policy insuring the Terrebonne Parish Sheriff's Department which contained the following exclusion:
1. This insurance policy does not apply to:
....
(b) Fines, penalties, punitive or exemplary damages, in whatever form assessed;
Because the policy lacked a valid written rejection as required by La. R.S. 22:1406(D), UM coverage was provided by law. Tugwell v. State Farm, 609 So.2d 195, 197 (La.1992). The issue on the motion for summary judgment was whether the exclusionary language in the liability policy applied to the statutorily provided UM coverage. The trial judge *1037 concluded that the exclusion does apply to the UM coverage. For the following reasons, we affirm.
UM coverage exists in all policies in an amount equal to the liability limit unless the insured expressly rejects UM coverage. Gaar v. Sowards, 573 So.2d 499, 500 (La.App. 1st Cir.), writ denied, 569 So.2d 990 (La. 1990); Perkins v. Guaranty National Insurance Company, 95-229, p. 3 (La.App. 3 Cir. 11/2/95); 667 So.2d 559, 562, writ denied, 96-0759 (La.5/31/96); 673 So.2d 1033. La. R.S. 22:1406 requires symmetrical treatment of liability and statutorily imposed UM policies. Fortier v. Hamblin, 610 So.2d 897, 900 (La. App. 1st Cir.1992).
In Bauer v. White, 532 So.2d 506 (La.App. 1st Cir.1988), this court looked to the definition of covered damages in the liability portion of the policy coupled with the absence of any exclusion for punitive damages to conclude that the UM portion of the policy included exemplary damages. We agree with the trial judge's conclusion that, "just as the language in the liability policy was used to determine the extent of UM coverage in Bauer, the language of the Alliance policy should determine the extent of UM coverage in the instant case. Inasmuch as the policy specifically excludes exemplary damages in its liability coverage and such an exclusion is permitted by statute, ... the UM coverage under the Alliance policy also excludes exemplary damages."
For these reasons, we find that the trial judge properly granted Alliance's motion for summary judgment.

CONCLUSION
For the reasons assigned above, we affirm the judgment of the trial court in favor of Fontana and affirm the trial court's grant of Alliance's motion for summary judgment on the issue of punitive damages. Costs of this appeal are assessed against Alliance.
AFFIRMED.
NOTES
[1] Fontana also sued the Louisiana Sheriffs' Automobile Risk Program (LASHARP) and Jerry J. Larpenter, Sheriff of Terrebonne Parish, as the provider of uninsured motorist coverage through LASHARP. Prior to trial, Fontana released LASHARP and Larpenter after accepting the tendered policy limits. Although Fontana did not sue Bourgeois or his insurer Allstate, these parties were added via a third party petition filed by Alliance. On the morning of trial, Fontana also released Allstate and Bourgeois after accepting Allstate's policy limits.