JiKLEES, Judge.
The principal issue in this case is whether the defendant/appellee, the Department of Transportation and Development (hereinafter “DOTD”), is liable for damages sustained by Plaintiffs/appellants, Kathleen Swinford (“Kathleen”) and Benjamin Swinford (“Ben”) (collectively referred to as “Plaintiffs”), in a severe automobile accident. The basis of Plaintiffs’ claim is that the accident occurred in whole or part as a result of the decision by the defendant DOTD to place a traffic control device referred to as an Asphalt Concrete Delineator (“ACD”) in order to divide two opposing lanes. Although the trial judge stated that “never has the court felt more sympathy for parties-plaintiff” and that “[njever has the Court been more desirous of granting an award to them which could help so greatly to make their loss a little easier to bear,” the court entered a judgment' in favor of defendant DOTD and against Plaintiffs and dismissed the case with prejudice at Plaintiffs’ costs. Plaintiffs filed a devolutive appeal from this final judgment. After considering argument of counsel and reviewing the pleadings, we must affirm the trial court’s judgment in favor of the defendant, DOTD.

FACTS:

The automobile accident occurred on October 10, 1986, in a construction zone on Interstate 20 in Richland Parish, Louisiana. Ben was driving a Subaru ^station wagon while Kathleen was riding as a front seat passenger, and their ten month old son was riding as a passenger in the rear seat. The section *31 of 1-20 where the accident occurred was under construction; only one side of the four-lane highway was open. Thus, the open side of the highway consisted of two lanes that had been temporarily adapted to handle two-way traffic through the 6.7 miles of construction (this type of construction is sometimes called a Two-Way, Two Lane Operation or “TLTWO”). To separate the two opposing lanes, the DOTD placed the ACD traffic control device; a device consisting of an asphalt median placed in the center of the opposing lanes and painted yellow.[1] The DOTD affixed yellow paddles on top of the ACD for every 100 feet.
While driving under this construction, Ben asked Kathleen to take control of the wheel while he would read a road map. Thus, Kathleen was holding the steering wheel and steering the car with one hand while Ben retained control of the accelerator, gear shift, and brake pedal. Unfortunately, while Kathleen was moving at an approximate speed of 45 mph, the vehicle strayed into the ACD. According to Ben, the contact with the ACD caused him to panic in the face of a head-on collision. Due to this panic reaction, Ben testified that a severe right over-steer of at least 90 to 120 degrees placed the car in an uncontrollable yaw which resulted in the vehicle rolling as it hit the median to the right of the vehicle’s original path. Kathleen was thrown from the vehicle and was rendered a C/6 quadriplegic while Ben, and the son, sustained minor injuries.
The trial court, in its reasons for judgment, found that the median markers — the ACD, did not cause this accident. The court found that “the accident was caused, more probably than not, by the action of Mrs. Swinford in turning too |3sharply to the right to correct her error of allowing the vehicle to contact the median markers.” Accordingly, the trial court found that the Plaintiffs failed to prove causation and dismissed Plaintiffs’ suit at their cost.

DISCUSSION:

The proper standard of review for a Louisiana appellate court is whether the trial court committed an error of law or a factual finding which is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). If the trial court’s decision is reasonable in light of the record reviewed in its entirety, the court of appeal 'may not reverse even though the appellate court would have weighed the evidence differently. Id. Accordingly, “where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Fontana v. Louisiana Sheriffs’ Automobile Risk Program, 96-1579, (La.App. 1 Cir. 6/20/97), 697 So.2d 1030, rehearing denied Aug. 20, 1997.
1. Whether the lower court committed legal error and was manifestly erroneous in fínding that: (1) the plaintiffs failed to prove cause-in-fact; (2) that the DOTD was not negligent; and (3) that the ACD did not present an unreasonable risk of harm
The Plaintiffs contend that “the facts show clearly that the ACD was one of the causes of the accident.” The plaintiffs argue that the evidence supports the only conclusion that the use of the ACD, and failure to use the positive concrete barriers (“PCB”)[2], caused the over-steering/overreaction which resulted in the vehicle rolling over. Plaintiffs’ argument is without merit.
Louisiana employs the duty-risk analysis in resolving a negligence ease. The Supreme Court stated that in making the requisite analysis, the following four-prong inquiry is considered: (1) Was the conduct in question a cause-in-fact of |4the resulting harm? (2) Did the defendant owe a duty to the plaintiff? *32 (3) Was the duty breached? and (4) Was the risk and harm caused within the scope of protection afforded by the duty breached? Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292 (La.1993), rehearing denied March 25, 1993. Further, the court stated that “for a plaintiff to recover on a negligence theory, all four inquiries must be affirmatively answered.” Id.
The first inquiry is whether the placement of the ACD was a cause-in-fact of Plaintiffs’ injuries. Jurisprudence has held, that “cause-in-fact is usually a ‘but for’ inquiry which test whether the injuries would not have occurred but for the defendant’s substandard conduct.” Fowler v. Roberts, 556 So.2d 1 (La.1989). (Emphasis added). Additionally, courts have held that when multiple causes are present, the method for determining whether a cause-in-fact exists is the “substantial factor” test. Roberts v. Benoit, 605 So .2d 1032, 1042 (La.1991). Under the substantial factor test, “cause-in-fact is found to exist when the defendants’ conduct was a ‘substantial factor’ in bringing about plaintiffs harm.” Id.
The trial court found that the Plaintiffs failed to prove (1) that the defendants engaged in substandard conduct by placing the ACD between the opposing lanes; and/or (2) that the placement of the ACD was a substantial factor in bringing about the accident. The trial judge found that the testimony and demeanor of Plaintiffs’ expert witness, Dr. Olin Dart, was not only poor and equivocal but provided little help to the court. However, the trial judge did find that the defendants expert witnesses, Dr. Ned Walton, Mr. Neis Burns and Mr. Larry Peterson were impressive, convincing and assisted the Court in reaching its conclusion.
Dr. Walton testified repeatedly, when asked whether the ACD played a part in causing the accident, that the ACD “was not instrumental or causative in the | saccident.”[3] Dr. Walton then testified that once Ben gave the wheel to Katherine, “he gave up the roadway, he gave up the visual cues of the roadway, he gave up the visual cue of the delineator, he gave up basically everything visual for him to operate his vehicle.” Further, Dr. Walton testified that in his opinion, “there was a very strong steering input to the vehicle’s steering wheel that goes down[4] —actually makes an input into the tire angle itself, that in the steering movement the vehicle crossed the lanes of travel into the normal median area, and the vehicle overturned.”[5]
Additionally, Mr. Peterson, a mechanical engineer and an expert witness for the DOTD, testified that in his opinion the ACD “did not cause or contribute to this accident.” He testified, “once the shared driving task had begun ... the Swinford vehicle, for whatever reason, drifted over or moved over, there was a contact with the median or ACD device, at which point a very severe steer was put in to stop its travel from the leftward drift or movement it was initially on to this very, very strong rightward movement to steer it back away from that ACD.”
Another expert witness, Mr. Burns, a professional consulting transportation and traffic engineer, also testified on behalf of defendant DOTD that the ACD was not a cause-in-fact of Plaintiffs’ accident. Mr. Burns was asked to evaluate the adequacy of the ACD and testified “that the accident caused was not attributed at all to the raised asphalt divider but was primarily caused by a lack of control — proper control of the vehicle by Mr. Swinford.”
UWe agree with the trial court, based on the testimony, that the DOTD did not engage in substandard conduct by placing the ACD barrier between the opposing lanes and that the “accident would probably have occurred *33 no matter what type of median markers had been used, even portable concrete barriers [PCB].” The record amply supports the trial court’s conclusion that the ACD was proper, that it was not a cause-in-fact of the accident, and that the ACD was not unreasonably dangerous giving rise to strict liability. Accordingly, we cannot say that the judge, being the finder of fact, manifestly erred in holding that the DOTD is not liable under either the duty-risk analysis or strict liability.
2. Whether the trial court erred by excluding evidence of the non-use of the ACD at any time subsequent to the accident
Plaintiffs allege that the trial court erred in excluding evidence as to whether or not DOTD ever used the ACD subsequent to the accident. Specifically, Plaintiffs allege that: (1) Rule 407 does not bar evidence of subsequent measures to show feasibility and defendant’s departure from former routine practice or custom; and (2) that the policies of Rule 407 are not relevant in this situation because the DOTD knew nothing of this accident until suit was filed and that no subsequent remedial measures were taken as a response to this incident. Plaintiffs’ argument is with merit.
Jurisprudence holds that a “trial court is granted a broad range of discretion when ruling on the admissibility of evidence, and evidentiary rulings shall not be disturbed on appeal absent a clear abuse of discretion.” Fontana v. Louisiana Sheriffs’ Automobile Risk Program, 96-1579, (La.App. 1 Cir. 6/20/97), 697 So.2d 1030 at 1034, rehearing denied August 20, 1997, citing Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, p. 11 (La.App. 1 Cir. 3/11/94), 634 So.2d 466, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094. However, we agree with the Plaintiffs that the evidence should have been admitted under the provisions of La. LC.E. art. 407, which allows evidence of subsequent measures to prove feasibility. The LSA-C.E. art. 407 states:
In a civil case, when, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligent or culpable conduct in connection with the event. This article does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, authority, knowledge, control or feasibility of precautionary measures, or for attacking credibility.
In this case, Plaintiffs wish to admit evidence on whether or not DOTD ever used the ACD median device subsequent to the accident to prove that DOTD was negligent. The trial court should have admitted the evidence offered by the Plaintiffs to prove the feasibility of other methods to divide traffic in construction zones. However, the trial court’s decision to exclude the evidence did not affect the outcome of this case. As discussed above, the evidence in the record indicates that the Plaintiffs’ vehicle did not go out of control because of conditions inherent in the ACD, rather the cause of loss of control was the major left hand steering input. Consequently, the trial court’s error in failing to admit the evidence that DOTD never used the ACD median device after the accident does not require reversal of the judgment dismissing the suit against DOTD.
3. Whether or not the trial court properly admitted two federal studies predating the accident and a videotaped vehicular demonstration prepared by DOTD’s expert
The Plaintiffs allege that the Court erred in admitting the Traffic Control Devices Handbook, the Temporary Asphalt Island[6] and DOTD’s crash test video. Plaintiffs’ argument is without merit.
As stated above, the trial court has a broad range of discretion when ruling on the admissibility of evidence. We agree with the defendant DOTD that the Traffic Control Device Handbook and the Temporary As *34 phalt Island are relevant Land appropriate for admission to show whether the DOTD acted reasonably in its decision to use the ACD device, whether the ACD created an unreasonable risk of harm, and whether the DOTD used good engineering judgment. Further, the Plaintiffs own attorney, on direct examination, brought the Traffic Control Device Handbook into issue when questioning Dr. Dart, the Plaintiffs expert witness.[7]
We also find that the trial court did not abuse its discretion by admitting into evidence the videotape of a vehicular test performed by DOTD’s expert witness, Mr. Peterson. The trial judge, in its reasons for judgment, stated that “both videos convince the court that such contact [with the ACD] did not cause Mrs. Swinford to lose control.”[8] Accordingly, the trial judge found that the video tape aided the court in determining how the vehicle would respond when it encountered the ACD and should be admissible.

CONCLUSION:

For the foregoing reasons, we affirm the judgment of the trial court rendering judgment in favor of defendant DOTD and against Plaintiffs. Accordingly, Plaintiffs’ case is dismissed with prejudice' at Plaintiffs’ costs.

AFFIRMED.

. William Hickey, a design engineer for the Louisiana DOTD, testified that the ACD was used in another state, and that it was a "completely acceptable device, and in fact even to the day, AASHTO still says it's an acceptable device to use.” He further stated that “they [DOTD] evaluated it and said it was acceptable, AASHTO accepted that, FHWA accepted it, and it’s accepted by AASHTO even today.”

. The PCB is a traffic control device which is commonly used in TLTWO operations. Studies have shown that slight contact with the PCB resulted in re-directing the vehicle back into the travel lane on a course virtually identical to the course of the vehicle prior to the contact with the PCB.

. Dr. Walton testified that the ACD is "no more than a factor in the roadway itself. The roadway is a factor because you're driving on the roadway. Had it been a concrete median barrier, you would have had the same result. The device itself is not instrumental in what she is doing.”

. All three expert witnesses, Dr. Walton, Mr. Peterson and Mr. Burns found that Kathleen, not Ben, was the source of the steering input due to the reaction time that would have been required for Ben to drop the map, analyze the visual and auditory cues, and to effect the steering input.

.Even Dr, Dart, Plaintiffs' expert witness, agreed that the movement of the vehicle to the right was totally dependent on the actions of Ben or Kathleen.

. Both the Traffic Control Devices Handbook and Temporary Asphalt Island are documents promulgated by the Federal Highway Administration.

. Dr. Dart was asked whether "that barrier guide [the Traffic Control Device Handbook ] represent the appropriate AASHTO standard that was in effect at the time of the design and installation of the ACD in this project?” Dr. Dart responded, "there is a dispute, I guess, in the profession as to what’s called a standard and what's a guide. The title implies it’s a guide.”

. Both the Plaintiffs and DOTD submitted into evidence video tests — tests which were designed to duplicate what was experienced the day of the accident.