k McKAY, Judge.
The Lake Borgne Basin Levee District (Levee District) entered into a contract with Burk-Kleinpeter, Inc. (BKI) to design and administer the Guerenger Canal Project. According to the terms of the contract, BKI was appointed as the Levee District’s representative for the project.
Pursuant to a public bid process based upon the plans and specifications by BKI, the project was awarded to Ronald Adams Contractor, Inc. (RACI), the low bidder, who entered into a contract with the Levee District on March 17, 1992. Under the plans and specifications, RACI was to complete the project within two hundred forty (240) days from the notice to proceed. The specifications also required RACI to submit a schedule of the proposed construction operations. Additionally, RACI was required to furnish shop drawings of all steel work for approval and no fabrication would begin until final approval of these plans.
On April 9, 1992, BKI issued a conditional notice to proceed. Pursuant to this conditional notice to proceed, RACI submitted a proposed construction progress schedule to BKI by letter dated May 11, 1992. According to this | ¡¡.schedule, steel *786 sheet pile wall work was to commence within ninety (90) days from the notice to proceed. The notice to proceed was issued on May 26,1992.
In the meantime, RACI entered into a management contract with Bob Wadhams, an independent contractor, by which he agreed to procure the sheet piling and oversee its installation. After the conditional notice to proceed was issued, Mr. Wadhams placed an order for the sheet piling with Fred Tschirch of Steel Piling, Inc. (SPI), the exclusive agent of Hoesch America, Inc., the United States affiliate of a German steel manufacturer.
After placing the order, Mr. Wadhams provided SPI with the plans and specifications for the project. Based on these documents, SPI produced two drawings, which were delivered to RACI for submission to the project engineer on May 5, 1992. Once RACI received the drawings from Mr. Wadhams, it forwarded them to BKI on May 6, 1992. On May 20, 1992, BKI returned RACI’s submittals with handwritten notations in red ink indicating the required lengths of the sheet piling. Because the order placed with SPI was inconsistent with the May 20, 1992 comments by BKI, Mr. Wadhams canceled the order.
On June 2, 1992, BKI informed RACI that it intended to change the design of “the transition sections of the sheet pile structures.” On June 17, 1992, RACI complained that the change to the transition sheet piling was holding up the entire sheet piling order. That same day, BKI issued changes which provided RACI with information necessary to place its order with SPI. SPI then prepared revised drawings that were approved by BKI. Thereupon, Mr. Wadhams placed a new 1 ¡¡order with SPI. Pursuant to this order, the sheet piling was to be rolled by July 10, 1992, with estimated arrival in New Orleans around August 17, 1992. However, the plant was able to place the order on a ship on July 14, 1992, with an estimated time of arrival in New Orleans by August 11,1992. Unfortunately, the sheet piling was placed on a Yugoslavian-owned vessel, the M/V BAR. At the time, Yugoslavian vessels were subject to seizure in the United States pursuant to Executive Order 12808 of May 80, 1992 and Executive Order 12810 of June 5, 1992. As a result, when the M/V BAR arrived in New Haven, Connecticut, it was detained. Eventually, SPI arranged for the sheet piling to be unloaded and delivered to New Orleans by truck in early October 1992. RACI then began work on the project but encountered inclement weather beginning in November 1992.
On March 25, 1993, RACI requested additional compensation in the amount of $70,458.00 “as damages caused by the untimely release of sheetpile lengths on this project.”[1] BKI rejected RACI’s claim for lack of justification or documentation. Some nine months later, RACI modified its claim seeking $159,355.00 in compensation, contending that RACI was unable to proceed with its work scheduled on August 17, 1992, but instead commenced its work on October 11, 1992, a fifty-six (56) day delay.
On April 15, 1994, RACI filed suit against the Levee District, seeking damages for alleged delays on the project. The Levee District, in turn, filed a Lthird- *787 party demand against BKI on June 29, 1994, alleging that any delay was due to BKI’s design changes. The case proceeded to trial on April 12, 18, and 14, 1999. The trial court rendered its judgment dismissing RACI’s claims on August 2, 1999, finding that “neither defendant is responsible for the damages sought by plaintiff in these proceedings.” It is from this judgment that RACI appeals.
The issue before this Court is whether the trial court erred in finding that neither BKI nor the Levee District was responsible for RACI’s alleged damages.
The proper standard of review for a Louisiana appellate court is whether the trial court committed an error of law or a factual finding which is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). If the trial court’s decision is reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though the appellate court would have weighed the evidence differently. Id. Accordingly, “where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Fontana v. Louisiana Sheriffs’ Automobile Risk Program, 96-1579 (La.App. 1 Cir. 6/20/97), 697 So.2d 1030; Swinford v. Dolphin Const. Co., 97-2504 (La.App. 4 Cir. 5/13/98); 716 So.2d 29.
In its brief, RACI cites contract provisions and cases supporting the principle that a contractor should be compensated for changes in a contract. However, RACI does not contend that the June 17, 1992 design changes, alone, increased the contract price. Rather, RACI contends that the timing of the contract change adversely impacted RACI’s schedule. At trial, BKI presented the expert | ^testimony of Ralph Junius, an engineer with direct experience with construction projects similar to the one at issue. Mr. Junius reviewed the sequence of events leading to BKI’s response to RACI’s submittal of drawings and further reviewed the design change for the transition sheet piling. In Mr. Junius’ opinion, the May 20,1992 comments to RACI’s drawings did not constitute a design change. In his opinion, it reflected the normal process of submitting shop drawings to an engineer for review and approval prior to the procurement of materials. Mr. Junius also indicated that the June 1992 design change to the transition piling constituted a legitimate and reasonable change contemplated in the original plans and specifications. There is no question that the Levee District had the right to make design alterations within the general scope of the contract. There is also no question that much of the delay was the fault of RACI or those whom it was responsible for; the choice to place the piling on a ship that was impounded was made by neither BKI nor the Levee District.
Furthermore, Louisiana courts have resolved that only actual damages are allowable and that a plaintiff must prove his damages to a reasonable or legal certainty. Shelby v. South Central Bell Telephone Co., 286 So.2d 496 (La.App. 4 Cir.1973); Guillory v. Terra, 613 So.2d 1084 (La.App. 3 Cir.1993); Barnco Intern., Inc. v. Arkla, Inc., 28,157 (La.App. 2 Cir. 11/15/96), 684 So.2d 986; Winnon v. Davis, 32-988 (La. App. 2 Cir. 5/15/00), 759 So.2d 321. RACI has failed to meet this burden of proof. At trial, RACI admitted that it did not provide the Levee District’s engineer an opportunity to determine additional actual costs | fiincurred during the period of alleged delay. In addition, RACI and its expert admitted that no attempt was made during the delay period to capture the actual costs of delay.
*788 After hearing three days of testimony and reviewing substantial documentary evidence, the trial court concluded that the conduct of the Levee District and BKI did not cause the delays experienced by RACI in completing the project. Based on the record before us, we find nothing clearly wrong nor manifestly erroneous with this judgment. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.

. In support of its request, RACI attached its schedule which "shows the sheetpiling operations to begin the third week in August and to be continued by the third week in October (a period of (60) calendar days).” The letter went on to say that "the delay in the release of sheetpile lengths delayed our construction operations from August 17, 1992 until October 12, 1992, a period of fifty-seven (57) calendar days.”